IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOUTHWEST KEY PROGRAMS, INC.,<br><br>*Plaintiffs*<br><br>v.<br><br>CITY OF HOUSTON,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:18-CV-03289<br><br>JURY TRIAL DEMAND<br><br>VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT PURSUANT TO 42 U.S.C. § 3601 et seq. |

# CITY OF HOUSTON'S ORIGINAL ANSWER

Defendant the City of Houston files its Original Answer as follows:

## I. INTRODUCTION

1. Defendant City of Houston ("COH", "City" or "Defendant") has acted to ensure compliance with its ordinances affecting the health and safety of the unaccompanied minors that Plaintiff Southwest Key Programs, Inc. ("Southwest Key" or "Plaintiff") holds in Houston under contract with the federal government. It is the City's concern for these children that drives its insistence on compliance with health and safety ordinances.

2. The City has informed Southwest Key that it must obtain the proper Institutional Group I ("I-1") Certificate of Occupancy to house children – from

infancy to adolescence – unaccompanied by parents or other personal guardians – at its proposed facility at 419 Emancipation Avenue.

3.      Even though two of Southwest Key's existing three facilities in Houston hold Institutional Group I certificates, Southwest Key did not apply for an I-1 certificate for 419 Emancipation. Rather, Southwest Key misrepresented that the facility would be used as before – to shelter adults and children accompanied by and under the care of their parents.  Informed by the City that the existing Residential Group I ("R-1") Certificate was not valid to house *unaccompanied* children, Southwest Key refused to apply for an I-1 certificate, submit required building plans, and allow the premises to be inspected for that new intended use.  The City has not impeded inspections or certifications of Southwest Key facilities; the City cannot act on applications Southwest Key will not file.

4.      Instead, Southwest Key followed its misrepresentation with attempts to pressure the City to disregard its ordinances through diversionary complaints – including this lawsuit – about Mayor Turner's principled statements opposing the separation of families.

5.      While Mayor Turner strongly condemns the separation of families, he also made clear before this lawsuit that the City will always protect the health and safety of unaccompanied children in Houston, such as those Southwest Key houses and proposes to house here:

> "I don't want anyone to criticize me for moving too quickly or in haste because others may have moved in haste on this policy so we're going to take the necessary time to make sure that we are prudent, that we are efficient, and we take every conceivable step that is in the best interest of the kids in this facility," he said.[1]

The Mayor elaborated after this suit was filed:

> "The city is only interested in the safety, security and well being of children and will continue to enforce all building codes and regulations designed to accomplish that purpose.
>
> "Southwest Key has repeatedly been asked to submit plans outlining the intended use of the facility to determine the proper occupancy use based on the International Building Code."
>
> "They have failed to do so. Hopefully they will realize that they are not exempt and must follow the rules like everyone else. We continue to wait for them to respond."[2]

Southwest Key's charge that the City and its the Mayor are motivated by animus toward minorities and immigrants, in violation of federal and state fair housing laws, is nothing short of ludicrous. The City takes pride in its reputation as the most diverse and welcoming city in the United States.

6. The City believes that years ago Southwest Key began in good faith its mission of providing compassionate care for children, including migrants. But the City also believes Southwest Key's capacity for compassionate care has been

---

1 Tanvi Misra, "Houston Mayor: I Won't Be an Enabler of Migrant Family Separation," Citilab, June 19, 2018, https://www.citylab.com/amp/article/563228/?__twitter_impression=true (last viewed September 30, 2018).

2 Olivia Pulsinelli, "Southwest Key sues city of Houston over facility for immigrant children," Houston Business Journal, Sept. 16, 2018, https://www.bizjournals.com/houston/news/2018/09/16/southwest-key-sues-city-of-houston-over-facility.html (last viewed Oct. 7, 2018).

overwhelmed by the influx of unaccompanied minors – whether separated at the border or arriving alone. As Southwest Key's CEO, Juan Sanchez, admitted about the exploding number of unaccompanied minors, "We got caught off guard by it ramping up so quickly."[3] "Now," he said, "you have a hundred, 50-to-100 kids – and where are you going to put them? – a day!"[4]

7. Whether caused by this influx or not, Southwest Key has recently faced a number of issues with the care it provides to migrant children. Shoddy background checks resulted in Southwest Key's hiring a staff member who raped detained children in Arizona, and the state has moved to revoke all 13 of Southwest Key's permits to operate.[5] The federal government recently shut down the Southwest Key shelter in Youngstown, Arizona.[6] Overworked staff members are too tired to chase after children who run away from Southwest Key shelters.[7] This is particularly

3 Henry Graber, "Shelter in the Storm," Slate, Jul. 6, 2018, https://amp.slate.com/news-and-politics/2018/07/southwest-key-and-family-separations-was-the-shelter-complicit.html (last viewed Oct. 6, 2018).

4 Antonia Cereijido and Maria Hinojosa, "Torn Apart 2: The Moral Dilemma of Juan Sanchez," Latino USA, Aug. 8, 2018, https://latinousa.org/2018/08/17/juansanchez/ (last listened Sep. 30, 2018)

5 E.g., Perla Trevizo, "Arizona moves to revoke licenses from all Southwest Key migrant-children shelters," Arizona Daily Star, Sep. 20, 2018, https://tucson.com/news/local/arizona-moves-to-revoke-licenses-from-all-southwest-key-migrant/article_2fea6c10-bc77-11e8-83cb-17461825a3f8.html (last viewed Sep. 30, 2018).

6 Matthew Casey, "Federal Officials Close Southwest Key Programs Shelter In Youngtown, Arizona," Fronteras, October 5, 2018, https://fronterasdesk.org/content/708892/federal-officials-close-southwest-key-programs-shelter-youngtown-arizona (last viewed Oct. 6, 2018).

7 Kavitha Surana and Robert Faturechi "Workers Running Shelters for Immigrant Kids Are Overworked, Undertrained, and Really Stressed Out," Mother Jones, June 28, 2018, https://www.motherjones.com/politics/2018/06/workers-running-shelters-for-immigrant-kids-are-overworked-undertrained-and-really-stressed-out/ (last viewed Sep. 30, 2018); Laura B. Martinez, "Police: Teen ran away from Southwest Key center in Brownsville," The Brownsville Herald, June 25, 2018 https://www.brownsvilleherald.com/news/local/police-teen-ran-away-from-southwest-key-center-in-brownsville/article_c6508c6c-7897-11e8-b666-6306f57bcc9f.html (last viewed Sep. 30, 2018).

disturbing given Southwest Key's averments in its Complaint that children at 419 Emancipation will have free egress to the streets Southwest Key facilities in Texas have been cited for hundreds of code violations over the last three years, justifying Mayor Turner's insistence that the City be "meticulous" in ensuring compliance with its health and safety ordinances.[8] The hundreds of citations against Southwest Key include 23 for "improper medical treatment" – "including one case where a clinician failed to follow up for two weeks with a minor who had tested positive for a sexually transmitted disease."[9]

8. The City agrees that Southwest Key, as it admits in its Complaint here and has admitted in other judicial proceedings, is bound by the *Flores* Settlement,[10] which specifies standards for the humane treatment of unaccompanied minors in the custody of the federal government and its agents. The *Flores* Settlement sets out "Minimum Standards for Licensed Programs" – such as Southwest Key's. The first is that they "shall comply with all applicable state child welfare laws and regulations and all state and *local building, fire, health and safety codes* ..." (emphasis added). Other Minimum Standards address the unaccompanied minor's living accommodations; health care; individual needs assessment; educational services;

8 Leif Reigstad, "Southwest Key Cited for Hundreds of Violations in the Last Three Years," Texas Monthly, June 28, 2018 https://www.texasmonthly.com/news/records-reveal-southwest-key-cited-hundreds-violations-last-three-years/ (last viewed Sep. 30, 2018).

9 Henry Graber, supra n. 6.

10 *Flores v. Reno*, Case No. CV 85-4544-RJK (C.D. Cal.); cited in Plaintiff's Complaint as *Flores v. Lynch*, 838 F.3d 898 (9th Cir. 2016).

recreational activities including time spent outdoors; individual and group counseling; acculturation and adaption services; "visitation and contact with family members (regardless of their immigration status)"; reasonable right to privacy; family reunification services; and "legal services information regarding the availability of free legal services"; among other standards.  The *Flores* Settlement provides for inspection of Licensed Facilities on reasonable notice, as well as a migrant minor's right to file a compliance action in the federal district court where he is being kept.  A copy of the *Flores* Settlement is attached as Exhibit 1.

9.    Although the City and Southwest Key agree on the applicability and importance of *Flores*, the City does not believe that Southwest Key is fully compliant with the Settlement provisions.  Indeed, the City is informed and believes that Southwest Key has taken actions in Houston to evade inspection and compliance with *Flores*.

10.    The City learned that Southwest Key may also operate another shelter, at 1550 La Concha Lane, to detain unaccompanied children, despite having only an R-2 certificate.  When elected officials sought to inspect the La Concha facility in June 2018, they were denied entry.  Forty-five days later, when the officials were allowed in, the younger children were gone.  They had been removed.  In an August 15, 2018 press conference, the visiting officials said they were told that children were not

allowed outdoors – in violation of *Flores*. The officials said that security concerns were voiced to explain why the children were not getting to go outside.

11. The City has requested that Southwest Key provide additional information about the La Concha facility because it is not operating under an I-1 certificate, although occupied by unaccompanied children.

12. The City is heartened by Southwest Key's and its CEO's recent admissions that they are not fulfilling their own standards for compassionate care and that they have brought in outside parties to review their operations:

> Jeff Eller, a spokesperson for Southwest Key, confirmed Monday that the Washington, D.C.-based Child Welfare League of America has agreed to conduct a "top-to-bottom review" of the processes in place at Southwest Key's 26 shelters, and at its Austin headquarters. [11]

The City is hopeful that – through this lawsuit or otherwise – the parties will come together to ensure compliance with City ordinances and the *Flores* Settlement to protect the migrant children who are housed in Houston. To this end, the City must enforce its Building, Fire, and Health Code requirements to ensure that unaccompanied children—without regard to their national original or method of placement—are safely housed in facilities. Southwest Key's plea that the City classify its facility the same as shelters that house children accompanied by their

11 Shannon Najmabadi, "Southwest Key hires child welfare organization to review processes," Texas Tribune, Oct. 1, 2018, https://www.texastribune.org/2018/10/01/southwest-key-hires-child-welfare-organization-review-processes/ (last viewed Oct. 6, 2018).

parents or guardians is nonsensical and contrary to the requirements of the International Building Code.

## II.  RESPONSES TO PLAINTIFF'S ALLEGATIONS

13.  With respect to paragraph 1 of Plaintiff's Original Complaint, the City admits that Plaintiff has brought suit and seeks relief, but denies all remaining allegations.

14.  The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 2 of Plaintiff's Original Complaint.

15.  The City admits the first sentence of paragraph 3 of Plaintiff's Original Complaint.  The City lacks knowledge or information sufficient to support a belief concerning the allegations in sentence 2 of paragraph 3 of Plaintiff's Original Complaint.  With respect to sentence 3, the City admits that 419 Emancipation has a history of use of a shelter but is without information sufficient to support a belief as to whether that facility is uniquely suitable for Southwest Key's and the government's purposes.  The City admits the remaining allegations in paragraph 3.

16.  With respect to paragraph 4, the City admits that Plaintiff applied for permits. The City lacks knowledge or information sufficient to support a belief concerning the remaining allegations in paragraph 4 of Plaintiff's Original Complaint.

17.  With respect to paragraph 5, the City admits it issued a certificate of occupancy on June 8, 2018 for the facility located at 419 Emancipation for use as

"OCC REPORT/SHELTER/DORMATORY/88 CODE."  The City denies it issued a certificate of occupancy for the "Casa Sunzal Shelter."

18.     With respect to paragraph 6, the City admits that 419 Emancipation underwent a Safety Survey and a Fire Prevention Permit was issued on or about June 16, 2018. The City further admits that the City reported to that 419 Emancipation had everything needed to operate as a shelter/dormitory.  The City admits the allegations in the third sentence of paragraph 6.  The City denies all other the allegations contained in paragraph 6 of Plaintiff's Original Complaint.

19.     The City denies the allegations contained in paragraph 7 of Plaintiff's Original Complaint.

20.     The City admits that Plaintiff is a domestic nonprofit corporation.  The City lacks knowledge or information sufficient to support a belief concerning the remaining allegations in paragraph 8 of Plaintiff's Original Complaint.

21.     The City admits the allegations in the first sentence of paragraph 9.  The City lacks knowledge or information sufficient to support a belief concerning the allegations in sentences 2 and 3 of paragraph 9 of Plaintiff's Original Complaint. The City admits the allegations in sentence 4 of paragraph 9.

22.     The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 10 of Plaintiff's Original Complaint.

23.    The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 11 of Plaintiff's Original Complaint.

24.    The City admits the allegations contained in paragraph 12 of Plaintiff's Original Complaint.

25.    The City admits the allegations contained in paragraph13 of Plaintiff's Original Complaint.

26.    The City admits the allegations in paragraph 14 of Plaintiff's Original Complaint.

27.    The City admits the allegations in paragraph 15 of Plaintiff's Original Complaint.

28.    The City admits the allegations in paragraph 16 of Plaintiff's Original Complaint.

29.    The City denies the last sentence in paragraph 17 of Plaintiff's Original Complaint.  The City admits the remaining allegations in paragraph 17 of Plaintiff's Original Complaint.

30.    The City admits the allegations contained in paragraph 18 of Plaintiff's Original Complaint.

31.    The City admits the allegations contained in paragraph 19 of Plaintiff's Original Complaint.

32.   The City admits the allegations contained in paragraph 20 of Plaintiff's Original Complaint.

33.   The City denies the allegations contained in paragraph 21 of Plaintiff's Original Complaint.

34.   The City admits the allegations contained in paragraph 22 of Plaintiff's Original Complaint.

35.   The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 23 of Plaintiff's Original Complaint.

36.   The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 24 of Plaintiff's Original Complaint.

37.   The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 25 of Plaintiff's Original Complaint.

38.   The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 26 of Plaintiff's Original Complaint.

39.   The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 27 of Plaintiff's Original Complaint.

40.   The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 28 of Plaintiff's Original Complaint.

41.   The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 29 of Plaintiff's Original Complaint.

42. The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 30 of Plaintiff's Original Complaint.

43. The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 31 of Plaintiff's Original Complaint.

44. The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 32 of Plaintiff's Original Complaint.

45. The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 33 of Plaintiff's Original Complaint. The City notes that it makes no sense, and in fact would be highly negligent, to allow young children unaccompanied by parents to freely leave the facility. The City also notes that public officials were told that children at another Southwest Key facility were not allowed to leave the facility.

46. The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 34 of Plaintiff's Original Complaint.

47. The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 35 of Plaintiff's Original Complaint.

48. The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 36 of Plaintiff's Original Complaint.

49. The City admits that 419 Emancipation has long been used for adults and families without a home. The City admits that the Star of Hope operated 419

Emancipation for many years as a shelter for women and children. The City further admits that the City of Houston housed displaced families with children after Hurricane Harvey at 419 Emancipation. The City admits the allegations in sentence 4 of paragraph 37. The City denies all other allegations in paragraph 37 of Plaintiff's Original Complaint.

50.    The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 38 of Plaintiff's Original Complaint. The City has not received building plans and has no knowledge of the current configuration of 419 Emancipation as Plaintiff alleges to have spent $3,000,000 preparing and staffing the facility.

51.    The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 39 of Plaintiff's Original Complaint.

52.    The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 40 of Plaintiff's Original Complaint.

53.    The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 41 of Plaintiff's Original Complaint.

54.    The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 42 of Plaintiff's Original Complaint.

55.    With respect to paragraph 43, the City admits it issued a certificate of occupancy on June 8, 2018 for the facility located at 419 Emancipation for use as

"OCC REPORT/SHELTER/DORMATORY/88 CODE."  The City denies it issued a certificate of occupancy for the "Casa Sunzal Shelter."  The City admits it issued a life safety compliance certificate on June 8, 2018 for 419 Emancipation, Building A, for Educational Use.  The City denies it issued a life safety compliance certificate for the "Casa Sunzal Shelter."

56.    With respect to paragraph 44, the City admits it conducted a fire safety inspection at 419 Emancipation on or about June 14, 2018.  The City further admits that a Fire Prevention Permit was issued for 419 Emancipation on June 16, 2018. The City denies the allegations contained in the second sentence of paragraph 44 of Plaintiff's Original Complaint.

57.    With respect to the first sentence of paragraph 45, the City admits the City stated 419 Emancipation was fully-permitted as a shelter/dormitory.  With respect to sentences 2 and 3, the City admits that City representatives reported that 419 Emancipation underwent a full occupancy inspection and had everything needed to operate as a shelter/dormitory.  The City admits the allegations in sentence 4 of paragraph 45.  The City denies all other the allegations contained in paragraph 45 of Plaintiff's Original Complaint.

58.    The City denies the allegations contained in paragraph 46 of Plaintiff's Original Complaint.

59.    The City lacks knowledge or information sufficient to support a belief concerning the allegations in paragraph 47 of Plaintiff's Original Complaint.

60.    The City admits the allegations contained in the first, third, and fourth sentences of paragraph 48 of Plaintiff's Original Complaint.  The City denies the allegations contained in the second and fifth sentences of paragraph 48.    The City lacks knowledge or information sufficient to support a belief concerning the allegations in the sixth, seventh, and eighth sentences of paragraph 48.

61.    The City admits the allegations contained in the first sentence of paragraph 49.  With respect to sentence 3, the City admits that Mayor Turner described 419 Emancipation was an excellent location for a shelter, but denies the remaining allegations.  The City denies the allegations contained in the second and fourth sentences of paragraph 49.  With respect to the fifth sentence in paragraph 49, the City admits Mayor Turner made the quoted remarks, but denies Plaintiff's allegations and characterization of those remarks.

62.    The City denies the allegations contained in the first sentence of paragraph 50 of Plaintiff's Original Complaint.  The City admits the allegations contained in the second sentence of paragraph 50.

63.    The City denies the allegations contained in paragraph 51 of Plaintiff's Original Complaint.

64.    The City admits the allegation contained in paragraph 52 of Plaintiff's Original Complaint.

65.    The City denies the allegation contained in the first sentence of paragraph 53 of Plaintiff's Original Complaint.   The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in the second sentence of paragraph 53.   The City denies the allegation contained in the third sentence of paragraph 53 of Plaintiff's Original Complaint.

66.    The City admits the first sentence of paragraph 54 is a partial quotation of the City's June 21, 2018 press release.   The City denies the allegations in the second sentence of paragraph 54.   The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in the third and fourth sentences of paragraph 54.   The City notes that Southwest Key's application for occupancy did not disclose that children, unaccompanied by a parent or guardian, would live at 419 Emancipation.   To date, the specific intended use of the property by Southwest Key is not fully known.   The City has not received an application and full building plans that show the interior living and sleeping arrangements and declare the specific intended use of the property with respect to unaccompanied children.

67.     With respect to paragraph 55, the City denies it alluded to harassment in any way.  The City admits it sought clarification concerning the ages of persons to be housed at 419 Emancipation and the use of the property.

68.     The City denies the allegations contained in paragraph 56 of Plaintiff's Original Complaint.

69.     The City denies the allegations contained in sentence 1 in paragraph 57 of Plaintiff's Original Complaint.  The City admits the remaining allegations contained in paragraph 57 of Plaintiff's Original Complaint.

70.     The City admits the first sentence of paragraph 58.  The City denies the remaining allegations contained in paragraph 58 of Plaintiff's Original Complaint.

71.     The City admits the allegations contained in the first and third sentences of paragraph 59 of Plaintiff's Original Complaint.  The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in the second sentence of paragraph 59.

72.     The City denies the allegations contained in paragraph 60 of Plaintiff's Original Complaint.

73.     The City admits that there is an internal City memorandum.  The City denies the remaining allegations in paragraph 61.

74.     The City admits it made the statement quoted in paragraph 62 of Plaintiff's Original Complaint.

75.     The City denies the allegations contained in paragraph 63 of Plaintiff's Original Complaint.

76.     The City admits the allegations contained in the first, fourth and fifth sentences of paragraph 64 of Plaintiff's Original Complaint.  The City denies the allegations contained in the second and third sentences of paragraph 64.  The City notes that jails are classified as I-3 Institutional facilities under Section 308 of the Building Code and must comply with much more rigorous requirements than an I-1 Institutional facility.

77.     The City denies the allegations contained in paragraph 65 of Plaintiff's Original Complaint.

78.     The City admits the allegations contained in paragraph 66 of Plaintiff's Original Complaint, with the exception that City denies that the August 3, 2018 letter to Southwest Key referenced a "detention facility". The City further denies Plaintiff's characterization of the City's position as a "media" stance; the City is fulfilling its obligations under the Building Code according to provisions of the Building Code.

79.     The City denies the allegations contained in paragraph 67 of Plaintiff's Original Complaint.

80.     The City denies the allegations contained in paragraph 68 of Plaintiff's Original Complaint.

81.    The City denies the allegations contained in the first sentence of paragraph 69 of Plaintiff's Original Complaint.  The City admits to the allegations contained in the second sentence of paragraph 69; the City Fire Chief's letter advised that the Certificate of Occupancy was invalid for the new intended use—housing children unaccompanied by a parent or guardian.  The City also notes that the Certificate of Occupancy issued for 419 Emancipation has not been revoked and no formal procedure for revocation of the Certificate of Occupancy has taken place.

82.    The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 70 of Plaintiff's Original Complaint.

83.    The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 71 of Plaintiff's Original Complaint.

84.    The City denies the allegations contained in the first sentence of paragraph 72 of Plaintiff's Original Complaint.  The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in the second sentence of paragraph 72 of Plaintiff's Original Complaint.

85.    The City admits that it previously inspected grease traps at 419 Emancipation and that an annual inspection of grease traps was required on or about August 24, 2018.  The City denies all remaining allegations contained in paragraph 73.

86.    The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 74 of Plaintiff's Original Complaint.

87.    The City denies the allegations contained in paragraph 75 of Plaintiff's Original Complaint.

88.    The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 76 of Plaintiff's Original Complaint.

89.    The City denies the allegations contained in paragraph 77 of Plaintiff's Original Complaint.

90.    The City denies the allegations contained in paragraph 78 of Plaintiff's Original Petition.

91.    The City denies the allegations contained in paragraph 79 of Plaintiff's Original Petition.

92.    With respect to paragraph 80, the City denies it discriminatorily insists that housing unaccompanied alien minors requires an Institutional use classification. The City lacks knowledge or information sufficient to support a belief concerning Plaintiff's federal grant.

93.    The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 81 of Plaintiff's Original Complaint.

94.    The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 82 of Plaintiff's Original Complaint.

95.    The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 83 of Plaintiff's Original Complaint.

96.    When read in conjunction with subheader "G," paragraph 84 is predicated on the presumption that there is no difference between a facility that shelters unaccompanied and accompanied children, which is untrue.  On that basis, the City denies the allegations contained in paragraph 84 of Plaintiff's Original Complaint.

97.    The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 85 of Plaintiff's Original Complaint.  Plaintiff's Complaint is unclear as to exactly what "these facilities" refers to.

98.    The City denies the allegations contained in paragraph 86 of Plaintiff's Original Complaint.

99.     Paragraph 87 does not include any allegations and therefore does not require a substantive response.

100.   The City denies the allegations contained in paragraph 88 of Plaintiff's Original Complaint.

101.   The City denies the allegations contained in paragraph 89 of Plaintiff's Original Complaint.

102.   The City denies the allegations contained in paragraph 90 of Plaintiff's Original Complaint.

103.   Paragraph 91 does not include any allegations and therefore does not require a substantive response.

104.   The City denies the allegations contained in paragraph 92 of Plaintiff's Original Complaint.

105.   The City denies the allegations contained in paragraph 93 of Plaintiff's Original Complaint.

106.   The City denies the allegations contained in paragraph 94 of Plaintiff's Original Complaint.

107.   Paragraph 95 does not include any allegations and therefore does not require a substantive response.

108.   The City admits the allegations contained in paragraph 96 of Plaintiff's Original Complaint.

109.   City denies the allegations contained in paragraph 97 of Plaintiff's Original Complaint.

110.   The City denies the allegations contained in paragraph 98 of Plaintiff's Original Complaint.

111.   With respect to paragraph 99, the City admits that procedures exist to revoke a certificate of occupancy.  The City denies the remaining allegations contained in paragraph 99 of Plaintiff's Original Complaint.

112.   The City denies the allegations contained in paragraph 100 of Plaintiff's Original Complaint.

113.   The City denies the allegations contained in paragraph 101 of Plaintiff's Original Complaint.

114.   Paragraph 102 does not include any allegations and therefore does not require a substantive response.

115.   The City admits the allegations contained in paragraph 103 of Plaintiff's Original Complaint.

116.   The City denies the allegations contained in paragraph 104 of Plaintiff's Original Complaint.

117.   The City denies the allegations contained in paragraph 105 of Plaintiff's Original Complaint.

118.   The City denies the allegations contained in paragraph 106 of Plaintiff's Original Complaint.

119.   Paragraph 107 does not include any allegations and therefore does not require a substantive response.

120.   With respect to paragraph 108, the City admits that 419 Emancipation should be deemed an institutional facility pursuant to its use as described by Plaintiff.  The City denies the remaining allegations contained in paragraph 108.

121.   The City denies the allegations contained in paragraph 109 of Plaintiff's Original Complaint.

122.   The City denies the allegations contained in paragraph 110 of Plaintiff's Original Complaint.

123.   The City denies the allegations contained in paragraph 111 of Plaintiff's Original Complaint.

124.   With respect to paragraph 112, the City denies that Plaintiff is entitled to the declarations it seeks.

125.   Paragraph 113 does not include any allegations and therefore does not require a substantive response.

126.   The City denies the allegations contained in paragraph 114 of Plaintiff's Original Complaint.

127.   The City denies the allegations contained in paragraph 115 of Plaintiff's Original Complaint.

128.   The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 116 of Plaintiff's Original Complaint.

129.   The City denies the allegations contained in paragraph 117 of Plaintiff's Original Complaint.

130.   The City denies the allegations contained in paragraph 118 of Plaintiff's Original Complaint.

131.   The City denies the allegations contained in paragraph 119 of Plaintiff's Original Complaint.

132.   The City denies the allegations contained in paragraph 120 of Plaintiff's Original Complaint.

133.   The City denies the allegations contained in paragraph 121 of Plaintiff's Original Complaint.

134.   The City denies the allegations contained in paragraph 122 of Plaintiff's Original Complaint.

135.   The City denies the allegations contained in paragraph 123 of Plaintiff's Original Complaint.

136.   The City denies the allegations contained in paragraph 124 of Plaintiff's Original Complaint.

137.   The City denies the allegations contained in paragraph 125 of Plaintiff's Original Complaint.

138.   The City lacks knowledge or information sufficient to support a belief concerning the allegations contained in paragraph 126 of Plaintiff's Original Complaint.

139.   With respect to paragraph 127, the City denies that Plaintiff is entitled to injunctive relief.

140.   Paragraph 128 does not include any allegations and therefore does not require a substantive response.

141.   With respect to paragraph 129, the City denies that Plaintiff is entitled to injunctive relief.

142.   With respect to paragraph 130, the City denies that Plaintiff is entitled to any of its requested relief.

143.   With respect to paragraph 131, the City denies that Plaintiff is entitled to injunctive relief.

144.   With respect to paragraph 132, the City denies that Plaintiff is entitled to any relief or any judgment entered in its favor.

## III. AFFIRMATIVE DEFENSES, SPECIFIC DENIALS, AND OTHER MATTERS CONSTITUTING AN AVOIDANCE

145. Plaintiff's claims must be dismissed because it failed to exhaust its administrative remedies. The City has not denied or revoked the certificate of occupancy for 419 Emancipation. City representatives have merely opined, based on information given to the City by Plaintiff, that the appropriate occupancy for the use described by Plaintiff would be Institutional-1. Plaintiff has instead filed suit rather than go through the appropriate administrative process.

146. Plaintiff lacks standing to bring discrimination claims on behalf of any unaccompanied minors. Plaintiff is a corporate entity and does not purport to be the legal guardian of any individual persons alleging to have been discriminated against on the basis of race, color or national origin.

147. Plaintiff's claims are not ripe for adjudication. There is no case or controversy between Plaintiff and the City because Plaintiff has not participated in the administrative process or cooperated with City officials with respect to permitting or certificates of occupancy. Plaintiff has failed to exhaust its administrative remedies prior to filing this lawsuit.

148. Plaintiff has failed to mitigate its damages.

149. The City pleads that it protected by the doctrine of governmental immunity.

150. The City pleads that the court lacks jurisdiction over Plaintiff's claims.

For the foregoing reasons, the City prays that Plaintiff take nothing by way of this lawsuit and for such further relief to which it might be justly entitled.

Respectfully submitted,

RONALD C LEWIS
CITY ATTORNEY
JUDITH L. RAMSEY
CHIEF, GENERAL LITIGATION SECTION

By: *__/s/ Brian Amis__*
Tiffany S. Bingham
Senior Assistant City Attorney
State Bar No. 24012287
S.D. Bar No. 1077536
tiffany.bingham@houstontx.gov
Brian A. Amis
Senior Assistant City Attorney
State Bar No. 24040424
S.D. Bar No. 37342
brian.amis@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6464
832.393.6259 (facsimile)

**ATTORNEYS FOR THE CITY OF HOUSTON**

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2018, I served the following attorneys with a true and correct copy of the foregoing document in accordance with Rule 5(b)(3) of the *Federal Rules of Civil Procedure* via the court's electronic filing / service system.

James Robinson Lindley
lindley@buckkeenan.com
Laura Gleen
lgleen@buckkeenan.com
BUCK KEENAN LLP
2229 San Felipe, Suite 1000
Houston, Texas 77019

***Attorneys for Plaintiff,***
***Southwest Key Programs, Inc.***

*/s/ Tiffany S. Bingham*
Tiffany S. Bingham