**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SOUTHWEST KEY PROGRAMS, INC.** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-3289** |
| | § | |
| **CITY OF HOUSTON** | § | |
| | § | |
| *Defendant.* | § | |

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS
DECLARATORY ACTION AND REQUEST FOR SPEEDY HEARING PURSUANT
TO FRCP 57**

---

Plaintiff Southwest Key Programs, Inc. ("Southwest Key") asks the Court to grant partial summary judgment pursuant to FRCP 56 on its claims against the City of Houston for declaratory relief. Southwest Key also requests a speedy hearing pursuant to FRCP 57.

## I.   INTRODUCTION

1.      Southwest Key seeks to open and operate a shelter for unaccompanied immigrant children in the City of Houston. Under the City's Building Code, this occupancy use is properly categorized as a "Residential Group R" use. The City, after fully licensing the shelter under that use category, has told the State of Texas that the occupancy license issued by the City is invalid and that the shelter should be categorized as an "Institutional Group I" use. As a result, the State has not issued licenses necessary for Southwest Key to open the Shelter.

2.      There are no disputed issues of material fact. Southwest Key asks the Court to declare that, as a matter of law, the shelter is properly categorized and licensed for "Residential Group R" occupancy use.

## II.   SUMMARY JUDGMENT EVIDENCE

3.      In support of this motion, Southwest Key includes the following evidence:

| | |
|---|---|
| Exhibit A: | Declaration of Marisela Saldana; |
| Exhibit B: | Application for Occupancy, Compliance Inspection, May 20, 2018; |
| Exhibit C: | Screenshots from the City of Houston website detailing inspection and certification activity at 419 Emancipation Avenue; |
| Exhibit D: | Operational Permits for 419 Emancipation Avenue; |
| Exhibit E: | Article: Immigrant Children's Shelter Considered for Downtown Houston, June 18, 2018; |
| Exhibit F: | Article: Separated at the Border from their Parents: In Six Weeks, 1,995 Children, June 15, 2018; |
| Exhibit G: | Article: "I can't support it": Mayor Turner Rejects Idea of Child Immigration Detention Center in Houston, June 16, 2018; |
| Exhibit H: | Email from M. McLeod RE 419 Emancipation Ave_ ILMS documents, June 19, 2018; |
| Exhibit I: | Article: Mayor's Office Press Release: During Uncertainty About Treatment of Migrant Infants and Children, Mayor Calls for Abandonment of Plan to House Them in Houston, June 21, 2018; |
| Exhibit J: | D. Montez Letter to M. Saldana of June 26, 2018; |
| Exhibit K: | Child-Care Inspection Form, August 2, 2018; |
| Exhibit L: | S. Peña Letter to A. Krause of August 16, 2018; |
| Exhibit M: | Declaration of J. Hal Caton; |

Exhibit N:     Controlling Person Form, Child Care Licensing, September 5, 2018;

Exhibit O:     Child-Care Inspection Form, October 10, 2018;

Exhibit P:     S. Turner Tweets;

Exhibit Q:     Email of A. Bernstein of June 17, 2018 RE Q&A memo on Southwest Key's new lease in Houston and the new federal border policy, and attachment;

Exhibit R:     Photographs of the exits at Casa Sunzal;

Exhibit S:     Excerpts from the 2012 International Building Code Commentary; and

Exhibit T:     *Flores* Settlement.

## III.   FACTUAL BACKGROUND

4.      The Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with the care of unaccompanied children arriving into the United States.[1]

5.      Unaccompanied children in ORR's custody are cared for through a network of state-licensed ORR-funded care providers, which are residential care providers that provide temporary housing and other services "in the least restrictive setting that is in the best interest of the child."[2]

6.      Southwest Key is a Texas non-profit corporation which operates ORR-funded facilities which provide such housing for unaccompanied minors arriving into the United States.[3] Southwest Key provides this housing pursuant to contracts

---

[1] 6 U.S.C. §279(a).
[2] 8 U.S.C. § 1232 (c)(2)(A).
[3] Declaration of Marisela Saldana, attached as Exhibit A.

with ORR.[4] Southwest Key operates facilities in Texas, Arizona, and California, and currently has three operating shelters in Houston.[5]

7.      Southwest Key seeks to open a fourth shelter in Houston to meet an increased need for immigrant youth housing.[6]

8.      A search of available properties identified a suitable site located at 419 Emancipation Avenue, Houston, TX 77003 (the "Casa Sunzal Shelter").[7] That site has a long history of use as a shelter facility which makes it uniquely suitable for Southwest Key's and the government's purposes. From approximately 1997 to 2016, the Star of Hope operated a homeless shelter at that site which counted children among its residents.[8] In 2017 and 2018, the City operated a shelter there for families (including children) displaced by Hurricane Harvey.[9]

9.      Southwest Key executed a ten-year lease for the Casa Sunzal Shelter in May 2018 and applied for necessary permits from the City and the State of Texas so that it could house minors at the facility.[10] Southwest Key seeks to house 16 and 17-year old children at the facility.[11]

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *See* City of Houston's Original Answer, filed on October 9, 2018 [Dkt. 8] ("Answer"), at ¶ 15.
[9]*Id.*
[10] Exhibit A; *See* Answer at ¶ 16.
[11] Exhibit A.

A. **Permitting and Licensing Requirements**

*City of Houston*

10.    In order for a building or structure to operate in the City, it must be granted various permits by the City. These include a Certificate of Occupancy issued by the City Permitting Center.[12]

11.    A Certificate of Occupancy, when granted, identifies the "occupancy use" and "group" of the structure pursuant to the 2012 International Building Code, adopted, as amended, by the City (the "Building Code").[13]

12.    As discussed in more detail below, the Building Code distinguishes "Institutional Group I" buildings and structures from "Residential Group R" buildings and structures.[14] These classifications are then further broken down into sub-categories, depending on the exact nature of the use of the facility.[15]

13.    The use classification given to a facility is of significant import, as the structural and other regulations with which the facility must comply vary depending on the use classification of the building.[16]

*State of Texas*

14.    In addition to a City Certificate of Occupancy, a youth shelter facility must receive an operational license from the State of Texas.[17] Facilities such as the

---

[12] Answer at ¶ 30.
[13] Answer at ¶ 31.
[14] See Building Code Sections 308, 310.
[15] Answer at ¶ 32.
[16] Answer at ¶ 34.
[17] Exhibit A.

Casa Sunzal Shelter require a General Residential Operation ("GRO") license to operate as a shelter for children.[18] The GRO license is issued under the direction of Texas Health and Human Services ("THHS")/Texas Department of Family and Protective Services ("DFPS").[19] As part of the GRO licensing process, THHS/DFPS requires license applicants to be in compliance with required city permitting.[20]

### B.  Southwest Key Receives All Required City Licenses and Permits

15.    On May 29, 2018, Southwest Key submitted an Application for Occupancy for 419 Emancipation Avenue, the location of the Casa Sunzal Shelter.[21]

16.    That facility had been previously used as a shelter for women and children by Star of Hope.[22] The City itself also used that facility to house displaced families with children after Hurricane Harvey.[23]  This prior use, including housing children, was permitted by the City via a Certificate of Occupancy under a "Residential" use classification pursuant to Section 310.1 of the Building Code.[24]

17.    Since Southwest Key intended to use 419 Emancipation for the same purpose as Star of Hope and the City itself had done—namely, as a Shelter/Dormitory—Southwest Key went through a duplicate certificate of

---

[18] Exhibit A.
[19] Exhibit A.
[20] Exhibit A.
[21] Application for Occupancy, Compliance Inspection, attached as Exhibit B.
[22] Answer at ¶ 49.
[23] *Id*.
[24] *Id*.

occupancy process, rather than having to go through the permit process for a chance of use.

18.     While a full inspection is not usually required when a duplicate application is filed, the City requested—and performed—a full inspection of Casa Sunzal on April 24, 2018.[25]

19.     From looking at the layout of the facility, the inspectors could clearly see that children would be housed there.[26]

20.     The City requested that Southwest Key make some minor modifications to Casa Sunzal.[27] Between April 24th and June 7th, the City performed inspections to confirm these modifications were made.[28] Again, the layout and décor of the facility made it apparent to the City inspectors that children would be housed there.[29]

21.     On June 8, 2018, the City issued a Certificate of Occupancy for the Casa Sunzal Shelter authorizing its use as a "SHELTER/DORMITORY" with a Residential use classification per the Building Code.[30]

---

[25] Exhibit A.
[26] Exhibit A.
[27] Exhibit A.
[28] Exhibit A; Screenshots from the City of Houston website detailing inspection and certification activity at 419 Emancipation Avenue, available at https://www.pdinet.pd.houstontx.gov/cohilms/webs/Inspn_Status.asp (last visited on November 8, 2018, login required), attached as Exhibit C.
[29] Exhibit A.
[30] Exhibit A; Operational Permits for 419 Emancipation Avenue, attached as Exhibit D, at 1; *See* Answer at ¶ 17.

22.     On June 14, 2018, the Casa Sunzal Shelter underwent a fire safety inspection by the City's Fire Marshal's Office and received a "Safety Survey Approval" and fire permits.[31]

23.     Shortly thereafter, the City reported to the press, through its spokespeople, that Southwest Key had everything it needed to operate, had undergone a full inspection and a change-of-ownership inspection, and it was up to date on its permits.[32]

### C.  **The Mayor Begins his Political Attacks and the City Changes Course**

24.     In mid-June, the national news became focused on the Trump Administration's policy of separating immigrant children from their parents at the border.[33]

25.     Mayor Sylvester Turner made clear that he "can't support" "separating children from their parents," and called the policy "morally bankrupt."[34]

---

[31] Exhibit A; Exhibit D; *See* Answer at ¶ 18.

[32] Answer at ¶ 18; Lomi Kriel, *Immigrant children's shelter considered for downtown Houston*, Houston Chronicle (June 18, 2018, 5:59 PM), available at: https://www.houstonchronicle.com/news/houston-texas/houston/article/Immigrant-children-s-shelter-considered-for-12999084.php?cmpid=gsa-chron-result (last visited November 8, 2018) attached as Exhibit E

[33] *See e.g.* Separated at the Border From Their Parents: In Six Weeks, 1,995 Children, June 15, 2018, available at: https://www.nytimes.com/2018/06/15/us/politics/trump-immigration-separation-border.html?module=inline (last visited November 8, 2018), attached as Exhibit F.

[34] "I can't support it": Mayor Turner Rejects Idea of Child Immigration Detention Center in Houston, June 16, 2018, available at: https://abc13.com/politics/i-cant-support-it-turner-rejects-child-immigration-detention-center/3610952/ (last visited November 8, 2018), attached as Exhibit G.

26.     Southwest Key plays no role in arresting or detaining immigrants.[35] It does not separate children from their parents, nor does it make or seek to influence any decision about the immigration status of any individual.[36]

27.     Nevertheless, Mayor Turner apparently decided that the mere fact that some children separated from their parents at the border might be staying Casa Sunzal was grounds to intervene and attempt to prevent the shelter from opening.[37]

28.     Turner—who, as Mayor is not typically involved in building code related-matters—made clear that his involvement in the process was triggered by political concerns over federal government policies. He stated:

> I do not question [Southwest Key's] intent. I don't question that…[B]ut I also made it clear to Southwest Key that I do not support this facility being used for … this purpose …
> ….
> I do not want the City to be an enabler in this process … I do not want the City to participate in this process. I do not want our facilities and property owners to participate in this process … We draw the line. Lastly … the fire department is yet to inspect this facility, the health department has yet to provide a food permit or shelter permit to this facility.[38]

29.     Turner's statements regarding the fire department permit and inspection were both wrong and contrary to the City's own prior media statements. Turner then

---

[35] Exhibit A.

[36] *Id.*

[37] *See* Exhibit G ("[n]o one ever said [the Casa Sunzal Shelter] was being leased to a tenant that was going to house children that were separated from their parents…[w]hen it comes to separating children from their families, I can't support it.").

[38] *Id.*

went on to say, "As far as I know, the State has yet to license this facility. I would ask the State not to move forward."[39]

30.     Mayor Turner's news conference marked the beginning of the City's deliberate efforts to prevent Southwest Key from opening the Casa Sunzal Shelter to house foreign national children.

31.     The same day, internal City correspondence shows that a "hard hold" was placed on all permitting in connection with the Shelter.[40]

32.     A few days later, Mayor Turner again made clear that he was tying the Shelter to Trump's separation policy, and was objecting to it on that basis:

> "It's hard for the City to grant approval when we don't know who's going to be there," the Mayor said of the [Casa Sunzal Shelter]. "The plan to proceed in housing children under this policy that was screwed up from the beginning is not going to go down well. You are not going to remove the stain."
>
> …
>
> "So when you start wrong, it's very difficult to get it right," Mayor Turner said of [Southwest Key's] approach.
>
> "The [ORR] gives the same classification of "unaccompanied minors" to children separated from their families and children who cross the border without adults, ORR officials said at the Tuesday meeting. Turner said that means there could be no way for Southwest Key to prevent itself from housing children seized from adult relatives by federal agents."
>
> …

---

[39] *Id.*

[40] Email from M. McLeod RE 419 Emancipation Ave_ ILMS documents, June 19, 2018, attached as Exhibit H.

"To say that others are doing it and therefore this should be okay doesn't satisfy me", the Mayor responded.

"If Southwest Key and property owner, David Denenburg, proceed with their plans, **City departments will conduct meticulous permitting inspections of the unused building "once we known who is going to be there" to see if the building can be used to house children, the Mayor explained.**" [41]

33.     Despite the Mayor's clear intent to prohibit Casa Sunzal from opening to house immigrant children, the City had already issued a certificate of occupancy and all other necessary licenses and certificates for Casa Sunzal to open.[42]

### D.  Southwest Key Seeks a State Permit, which is Not Issued Due to a Misleading Letter from the City

34.     With its certificate of occupancy in hand, Southwest Key submitted an application to the State of Texas for a GRO license to operate the Casa Sunzal Shelter.[43] Some additional information was provided to the State upon its request and the State performed an inspection.[44] Two minor plumbing issues were corrected, and the State found the Casa Sunzal Shelter to be in compliance with all State standards.[45]

---

[41] Mayor's Office Press Release: During Uncertainty About Treatment of Migrant Infants and Children, Mayor Calls for Abandonment of Plan to House Them in Houston, June 21, 2018, available at: http://www.houstontx.gov/mayor/press/abandon-plan-housing-children-houston.html (last visited November 8, 2018) (emphasis added).
[42] Exhibit D.
[43] *See* D. Montez letter to M. Saldanas of June 26, 2018, attached as Exhibit J.
[44] Exhibit A.
[45] Exhibit A; Child-Care Inspection Form attached as Exhibit K.

35.     But on August 16, 2018, the City Fire Department, apparently in connection with the Mayor's campaign against Casa Sunzal housing immigrant children in Houston, sent the State a letter alleging that the correct occupancy designation for Casa Sunzal was Group "I" Institutional Occupancy, and not the Group "R" designation it currently had.[46] Therefore, the Fire Department asserted, "the Certificate of Occupancy for 419 Emancipation is invalid."[47]

36.     There is no such thing as an "invalid" Certificate of Occupancy.[48] Once issued, a certificate remains valid unless revoked after several procedural steps have been undertaken.[49] The City admits that it has not revoked the Certificate of Occupancy and that "no formal procedure for revocation of the Certificate of Occupancy has taken place."[50]

37.     Nevertheless, based on the Fire Department's letter, the State refused to issue a GRO license for Casa Sunzal.[51] The State informed Southwest Key that, if Southwest Key did not withdraw its application for the license, the license would be denied, which would have negative consequences for any future license application made by Southwest Key.[52]

---

[46] S. Peña Letter to A. Krause of August 16, 2018, attached as Exhibit L.
[47] *Id*.
[48] Declaration of J. Hal Caton, attached as Exhibit M.
[49] *Id*.
[50] Answer at ¶ 81.
[51] Exhibit A.
[52] Exhibit A.

38.     Southwest Key withdrew its application for a State license, then resubmitted it on September 5, 2018.[53] As part of its review of this resubmitted application, the State performed another site inspection.[54]

39.     The only deficiency reported by the State following that inspection was:[55]

| Standard/Rule Description | Specifics | Findings | Comply By | TA Given |
|---|---|---|---|---|
| 748.3101(1) Fire Inspection- Must have fire inspection before initial permit issued (Weight: Medium High) | Based on the information we have recieved from the city of Houston, the fire permit is not valid. | Deficiency | 11/10/2018 | N |

40.     Domanique Vital, the State representative performing the inspection, made clear that the "information" referred to is the August 16th letter from Chief Peña.[56]

41.     So, as a result of the City's letter, the State will not issue a GRO license and without that license, Southwest Key cannot open the Casa Sunzal facility.

42.     The Office of Refugee Resettlement ("ORR") has informed Southwest key that if it does not begin operation of the Casa Sunzal Shelter soon, ORR will defund the program.[57]

---

[53] Exhibit A; Controlling Person Form, Child Care Licensing, attached as Exhibit N.
[54] Exhibit A; Child-Care Inspection Form, attached as Exhibit O.
[55] Exhibit O.
[56] Exhibit A.
[57] Exhibit A. Originally, ORR gave Southwest Key an October 28, 2018 deadline by which it had to open the facility. That particular deadline is no longer in effect, but ORR has been clear that the facility must open soon if Southwest Key wishes to keep its contract.

## IV.  SUMMARY JUDGMENT STANDARD

43.     Summary judgment is proper if the movant shows that there are no genuine disputed of material fact and that the movant is entitled to judgment as a matter of law.[58]

## V.  CASA SUNZAL IS PROPERLY CERTIFIED AS A RESIDENTIAL FACILITY UNDER THE BUILDING CODE

44.     Again, a facility operating in the City of Houston must hold a certificate of occupancy under the Building Code.[59]

45.     On June 8, after having conducted two inspections of the facility and after having had every opportunity to determine its intended use, the City issued a certificate of occupancy for residential use.[60]

46.     Chapter 3 of the Building Code contains lists of representative uses that are arranged into broad classifications called Occupancy Groups.[61] Of import here are the Institutional Group I uses, detailed under Code Section 308, and Residential Group R uses, detailed under Code Section 310.

47.     Building Code Section 308.1 states:

> Institutional Group I occupancy includes, among others, the use of a building or structure, or a portion thereof, in which care or supervision is provided to persons who are or are not capable of self-preservation without physical assistance or in which persons are detained for penal or correctional purposes on in which the

---

[58] FRCP 56(a); *Tolan v. Cotton*, 572 U.S. 650, 134 S. Ct. 1861, 1866 (2014).
[59] Exhibit M.
[60] Exhibit D.
[61] Exhibit M; Building Code Chapter 3.

liberty of the occupants is restricted. Institutional occupancies shall be classified as Group I-1, I-2, I-3, or I-4.

48.     "Incapable of self-preservation" is defined in Building Code Section 202 as "persons because of age, physical limitations, mental limitations, chemical dependency, or medical treatment who cannot respond as an individual to an emergency situation."

49.     The occupants of the Casa Sunzal Shelter are capable of self-preservation without physical assistance.[62] At ages 16-17, they are much more than 2 ½ years old, and do not suffer any physical, mental, or other limitations which would render them unable to respond to an emergency situation.[63]

50.     The occupants of the Casa Sunzal Shelter are not detained for penal or correctional purposes.[64] They are at the Shelter to keep them safe until either a suitable relative or other adult assumes responsibility for them, or they are deported as a result of immigration proceedings.[65]

51.     Despite its public statements to the contrary,[66] in an internal memorandum, the City has explicitly stated that the Casa Sunzal Shelter is not a

---

[62] Exhibit A.

[63] Exhibit A.

[64] Exhibit A.

[65] Exhibit A.

[66] On July 31, 2018, Mayor Turner referred to Casa Sunzal as a "detention center" in two Tweets: "There are reports tonight that a @SouthwestKey detention center will open next week at 419 Emancipation. @HoustonFire has NOT inspected or issued an operational permit. I oppose the facility" @SylvesterTurner, Twitter (Jul. 31, 2018, 10:15 PM), https://twitter.com/SylvesterTurner/status/1024478573267234816; and "More on @SouthwestKey's plan, which I oppose, to detain migrant children downtown: City Fire Safety

detention center.[67] That memorandum describes the would-be-occupants as in "quasi foster care," and acknowledges that ORR places the children in "**residential facilities**, partly through contracts with [Southwest Key.]"[68]

52.    The liberty of the occupants of the Casa Sunzal Shelter is not restricted.[69] There are no mechanical restraints used.[70] There are no locks preventing them from leaving their rooms and they are free to move about the facility.[71] As in a school setting, children are verbally discouraged from leaving Casa Sunzal and their leaving would be against the rules, but they are not physically restrained if they try to leave the campus.[72]

53.    The 2012 International Building Code Commentary (the "Commentary") is published by the International Code Council ("ICC"). It is authored by ICC technical staff and is universally recognized as the authoritative

---

permit they circulated to news media tonite [sic.] doesn't fit such an operation, @FireChiefofHFD says. They need, but haven't sought, 1 for a detention center #KeepFamiliesTogether" @SylvesterTurner, Twitter (Jul. 31, 2018, 11:31 PM), https://twitter.com/SylvesterTurner/status/1024497919670603777 (internal links omitted), attached as Exhibit P.

[67] SWK (1).doc emailed by A. Bernstein to Mayor Turner on June 17, 2018 at 3:26 PM, attached as Exhibit Q. Note that Mayor Turner received this memorandum six weeks before he called the Shelter a "detention center" on Twitter.

[68] *Id*. (emphasis added).

[69] Exhibit A; *see also* 8 U.S.C. § 1232 (c)(2)(A) which requires that unaccompanied minors be housed "in the least restrictive setting that is in the best interest of the child."

[70] Exhibit A.

[71] Exhibit A.

[72] Exhibit A; *see also* Photos of Exit Doors, attached as Exhibit R, which shows that all but one exit door opens when a bar is pushed, and one door opens when a handle is depressed.

work that provides insight, background and guidance on how to apply the Code.[73] The City of Houston turns to the Commentary for guidance in implementing the Code.[74]

54.    Regarding Institutional Group I facilities, the Commentary explains:

> Institutional occupancies are comprised of two basic types. The first relates to **health care facilities that are intended to provide medical care or treatment for people who have physical or mental disabilities or diseases and other infirmities**. This includes persons who are ambulatory and are capable of self-preservation as well as those who are restricted in their mobility or totally immobile and need assistance to escape a life-threatening situation, such as a fire (**i.e., children 2 ½ years of age or less and infirm persons**). **The second type of occupancy relates primarily to detention and correctional facilities.** Since security is the major operational consideration in these kinds of facilities, the occupants (**inmates**) are under some form of restraint and may be rendered incapable of self-preservation without assistance in emergency situations.[75]

55.    As can be seen from the Commentary, the Casa Sunzal Shelter is not an Institutional facility. It is not a healthcare facility.[76] No children aged 2 ½ or younger will be housed there, nor will infirm persons be housed there.[77] It also will not be a detention or correctional facility as the occupants are not inmates, are not under any form of restraint, and are not rendered incapable of self-preservation.[78]

---

[73] Exhibit M.
[74] *Id*.
[75] Commentary at 3-22 (emphasis added), excerpts attached as Exhibit S.
[76] Exhibit A.
[77] Exhibit A.
[78] Exhibit A; *see also* the 1997 consent decree in Case No. CV 85-4544-RJK(Px) in the United States District Court in the Central District of California, known as the "Flores Settlement", and

56.     Additionally, the Casa Sunzal Shelter does not fit into any of the four

Institutional sub-groups delineated in the Code.

### A. Institutional Group I-1

> This occupancy shall include buildings, structures, or portions
> thereof for more than 16 persons who reside on a 24 hour basis in a
> supervised environment and receive *custodial care*. The persons
> receiving care are capable of self-preservation …[79]

57.     "Custodial care" is defined in Code Section 202 as "assistance with

day-to-day living tasks; such as assistance with cooking, taking medication, bathing,

using toilet facilities and other tasks of daily living. Custodial care includes persons

receiving care who evacuate at a slower rate and/or who have mental and psychiatric

complications."

58.     The occupants of the Casa Sunzal Shelter are not provided with

custodial care.[80] They must bathe themselves, dress themselves, use toilet facilities

themselves, clean their own rooms, and are generally responsible for all other tasks

of daily living.[81] The children must self-administer their medication in accordance

---

attached as Exhibit T. The *Flores* Settlement "sets out nationwide policy for the detention,
release, and treatment of minors in [its] custody . . . ." *See Flores v. Lynch*, 838 F.3d 898 (9th
Cir. 2016) (recognizing continuing applicability of Flores Settlement to unaccompanied minor).
The Flores Settlement requires ORR to "treat . . . all minors in its custody with dignity, respect,
and special concern for their vulnerability as minors," and, to place them "in the least restrictive
setting appropriate to the minor's age and special needs." *Flores* Settlement, ¶ 11. It noted that
the federal government "usually houses persons under the age of 18 in an open setting, such as a
foster or group home, and **not in detention facilities**." *Flores* Settlement at p. 45 (emphasis
added).
[79] Building Code Section 308.3 (emphasis in original).
[80] Exhibit A.
[81] Exhibit A.

with State law.[82] They do not evacuate at a slower rate than the normal population, and don't have mental or physical complications.[83]

59.     The Commentary compares "custodial care" with "personal care," explaining that "on the lower end of the care spectrum (i.e., personal care), occupants are supervised but do not need custodial or medical care."[84]

60.     The services provided to the occupants of Casa Sunzal are personal care services, not custodial care.[85]

61.     Therefore, an I-1 occupancy designation is improper for Casa Sunzal.[86]

### B.  **Institutional Group I-2**

> This occupancy shall include buildings and structures used for *medical care* on a 24-hour basis for more than five persons who are *incapable of self-preservation* …[87]

62.     The Casa Sunzal Shelter is not used for medical care.[88]

63.     As explained above, the occupants of the Shelter are not incapable of self-preservation.[89]

64.     Therefore, an I-2 occupancy designation is improper for Casa Sunzal.[90]

---

[82] Exhibit A; *see* Tex. Admin. Code. § 748.2009 *et seq.*
[83] Exhibit A.
[84] Exhibit S.
[85] Exhibit A; Exhibit M.
[86] Exhibit M.
[87] Building Code Section 308.4 (emphasis in original).
[88] Exhibit A.
[89] Exhibit A.
[90] Exhibit M.

C. **Institutional Group I-3**

This occupancy shall include buildings and structure that are inhabited by more than five persons who are under restraint or security. An I-3 facility is occupied by persons who are generally *incapable of self-preservation* due to security measures not under the occupants' control …[91]

65.     The occupants of Casa Sunzal are not under restraint or security.[92] The facility is not a detention facility.[93] There are no locks on internal doors and there is no limit on egress to the outside of the building.[94] No mechanical restraints are used on the occupants.[95]

66.     The occupants of Casa Sunzal are not incapable of self-preservation due to any security measures not under their control.[96]

67.     Therefore, an I-3 occupancy designation is improper for Casa Sunzal.[97]

---

[91] Building Code Section 308.5 (emphasis in original).
[92] Exhibit A.
[93] Exhibit A; *see also* Exhibit T.
[94] Exhibit A; Exhibit R.
[95] Exhibit A.
[96] Exhibit A.
[97] Exhibit M.

D. **Institutional Group I-4 Day Care Facilities**

> This group shall include buildings and structures occupied by more than five persons of any age who receive *custodial care* for fewer than 24 hours per day …[98]

68.    Casa Sunzal is not a daycare facility.[99] Its occupants are there 24 hours a day.[100]

69.    As explained above, the occupants of Casa Sunzal do not receive custodial care.[101]

70.    Therefore, an I-4 occupancy designation is improper for Casa Sunzal.[102]

71.    A facility is only properly designated as Institutional if it falls into one of the four sub-categories of Institutional use.[103] Since none of the Institutional sub-categories correctly describes the intended use of the Casa Sunzal Shelter, Casa Sunzal cannot be classified as Institutional.[104]

72.    Section 310.1 of the Building Code states that:

> Residential Group R includes, among others, the use of a building or structure, or a portion thereof, for sleeping purposes when not

---

[98] Building Code Section 308.6 (emphasis in original).
[99] Exhibit A; Exhibit M.
[100] Exhibit A.
[101] Exhibit A.
[102] Exhibit M.
[103]  *See* Building Code Section 308.1 "Institutional occupancies **shall be** classified as Group I-1, I-2, I-2, or I-4." (emphasis added); Exhibit M.
[104] Exhibit M.

classified as an Institutional Group I or when not regulated by the *International Residential Code*.[105]

73.     Only one- and two-family dwellings are regulated by the International Residential Code,[106] so it is not applicable to the Casa Sunzal Shelter.[107]

74.     Since Casa Sunzal Shelter does not fit any of the classifications within the Institutional Occupancy Group, the Code requires that it be properly classified as a Residential Occupancy.[108]

75.     This is precisely the conclusion which the City originally reached when it issued a Residential Certificate of Occupancy and all the connected licenses to Casa Sunzal.[109] Not until the Mayor began his public and private crusade against Southwest Key did the City offer—with no attempted justification—the unsupportable view that the facility should be classified as Institutional.

76.     The Court should find that, just as the City originally determined, the proper use classification of the Casa Sunzal Shelter under the Building Code is Residential Group R.

---

[105] Emphasis in the original.
[106] The 2012 International Residential Code, as amended and adopted by the City of Houston, applies to "detached one- and two-family dwellings and townhouses not more than three stories above grade plane in height with a separate means of egress and their accessory structures." Houston Amendments to the 2012 International Residential Code R 101.2.
[107] Exhibit M.
[108] Exhibit M.
[109] *See* Exhibit D.

## VI.  REQUEST FOR SPEEDY HEARING

77.     ORR had initially informed Southwest Key that it will cancel its contract for the Casa Sunzal Shelter if children were not housed in the facility by around October 28, 2018.[110] Because of ORR's urgent need for beds for the children in its custody, it has temporarily suspended that deadline,[111] all the while making clear to Southwest Key that this suspension is not indefinite, and that it will cancel its contract for Casa Sunzal if Southwest Key cannot place children in the Shelter soon.[112]

78.     While Southwest Key is awaiting a State license to open its doors, that license is being withheld due to the City's stating its position that the Residential Certificate of Occupancy previously issued by the city is "invalid" and that the Shelter must be licensed as an Institutional facility, rather than Residential.[113]

79.     Should the Court grant this motion, the State will have no grounds on which to continue to rely on the City's representation regarding the correct use classification, and will issue the GRO license which Southwest Key needs to operate the facility.

80.     In order that this matter be resolved before ORR cancels its contract with Southwest Key, should the Court determine that a hearing is necessary in

---

[110] Exhibit A.
[111] Exhibit A
[112] Exhibit A.
[113] Exhibit A.

connection with this motion, Southwest Key asks that the hearing be expedited pursuant to FRCP 57.

## VII.  CONCLUSION AND PRAYER

81.     There are no genuine disputes over the material facts: Southwest Key seeks a license to operate Casa Sunzal as a residential facility for unaccompanied minors. Those minors will not be detained, nor will they be in a medical facility. They are not receiving custodial care, nor are they incapable of self-preservation.

82.     Therefore, as a matter of law, Casa Sunzal is not an Institutional Group I facility, but rather a Residential Group R facility pursuant to the Building Code.

83.     Southwest Key asks the Court to declare that the use of Casa Sunzal to house and provide personal care to unaccompanied minors over the age of ## makes it a Residential Group "R" facility pursuant to the Building Code.

84.     If the Court believes a hearing is necessary in deciding this motion, Southwest Key asks that the hearing be expedited so that this matter may be resolved before ORR cancels Southwest Key's contract for failure to open the Shelter.

Respectfully submitted,

**Buck Keenan LLP**

By: */s/ J. Robin Lindley*
J. Robin Lindley
State Bar No. 12366100
SDTX Bar No. 9693
lindley@buckkeenan.com
2229 San Felipe, Suite 1000
Houston, Texas 77019
(713) 225-4500
(713) 225-3719 (fax)

**ATTORNEY-IN-CHARGE FOR
SOUTHWEST KEY PROGRAMS, INC.**

**OF COUNSEL**
Laura Gleen
State Bar No. 24085329
SDTX Bar No. 1673869
lgleen@buckkeenan.com
2229 San Felipe, Suite 1000
Houston, Texas 77019
(713) 225-4500
(713) 225-3719 (fax)

## CERTIFICATE OF SERVICE

On November 12, 2018, I electronically submitted this pleading to the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner provided by Federal Rules of Civil Procedure 5(b) (2).

*/s/ Laura Gleen*
Laura Gleen