IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SOUTHWEST KEY PROGRAMS, INC., | § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:18-CV-03289 |
| *Plaintiff* | | |
| v. | | JURY TRIAL DEMAND |
| CITY OF HOUSTON, | | |
| *Defendant.* | | |

**DEFENDANT, CITY OF HOUSTON'S REPLY TO RESPONSE TO DEFENDANT'S MOTION TO DISMISS UNDER THE
<u>TEXAS CITIZEN PARTICIPATION ACT</u>**

Defendant City of Houston ("City") replies to Plaintiff, Southwest Key Programs, Inc.'s ("Plaintiff" or "SWK"), response to Defendant's motion pursuant to the Texas Citizens Participation Act ("TCPA"), Tex. Civ. Prac. & Rem. Code § 27.001, *et seq.*, to dismiss all claims asserted in Plaintiff's Original Complaint ("Complaint"). The City filed its motion in the alternative to, but specifically adopted and incorporated by reference, the City's Motion to Dismiss under Rule 12(b)(1) and Motion for Judgment on the Pleadings under Rule 12(c), filed simultaneously with its TCPA motion, and further incorporates Defendant's replies to Southwest Key's responses to those motions.

## ARGUMENT AND AUTHORITIES

**A.    Contrary to its argument, SWK pleads state law claims and, consequently, the TCPA is applicable.**

SWK's assertion that, "[t]here are no state law claims in the present litigation" (Dkt # 20, p. 6, ¶ 18) does not appear to be accurate. The opening paragraph to SWK's Original Complaint states that, "Southwest Key seeks declaratory, injunctive, and monetary relief against the City for violations of the Federal Fair Housing Act 42 U.S.C. § 3601 *et seq.*; the Texas Fair Housing Act, Texas Property Code Section 301.001 *et seq.*;[1] the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and the Supremacy Clause of the United States Constitution." Dkt # 1, p. 1, ¶ 1 (emphasis added). In addition:

1. Southwest Key's Complaint pleads detailed facts applicable to both federal and state causes of action, and specifically concludes at the end of paragraph 7 that "… the City has violated federal and state fair housing laws." Dkt # 1, pp. 2-3, ¶¶ 2-7.

2. Southwest Key identifies the facilities at issue as constituting "dwellings" within "the meaning of the Texas Fair Housing Act (THA), Texas Property Code Section 301.003(8)," and that "Southwest Key is an aggrieved person" for purposes of "Texas Property Code Section 301.151(a)." Dkt # 1, p. 3, ¶ 8.

---

[1] In its Response to the City's motion, SWK recognizes that "Southwest Key's Original Complaint makes reference in the opening paragraph to a claim under the Texas Fair Housing Act; however, that claim was not included in the claims pled." Dkt # 20, p. 6, ¶ 18, n.16.

3. Southwest Key recites that "The City of Houston is a person subject to … Texas Property Code Section 301.003(12)." At all relevant times described herein the City acted through its agents, officers and employees." Dkt # 1, pp. 3-4, ¶ 9.

4. Under "Jurisdiction and Venue," Southwest Key clearly invokes "supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal law claims and arise out of a common nucleus of related facts. Plaintiff's federal and state law claims form part of the same case or controversy under Art. III of the United States Constitution." Dkt # 1, p. 3, ¶ 11.

5. Southwest Key seeks Declaratory Action and Injunctive Relief without naming any law in paragraphs 107-129; the relief sought, including a claimed separate "cause of action" for injunctive relief, describes relief available under Texas State law for violation of the Texas Fair Housing Act. Tex. Prop. Code § 301.153 (injunctive relief available under Texas Fair Housing Act).

6. Southwest Key's non-numbered labels in several "causes of action" are immediately followed by a numbered paragraph which clearly, unequivocally, and repeatedly states "Plaintiff realleges and incorporates herein all preceding paragraphs." ¶¶ 87, 91, 95, 102; Dkt # 1, pp. 25-27; ¶¶ 107, 113, 128; Dkt #

3

1, pp. 25-32. Thus Plaintiff specifically incorporates by reference all state law claims and supporting facts from the full Complaint into these late appearing paragraphs.

7. The "Prayer" in SWK's Original Complaint (Dkt # 1, pp. 32-33, ¶¶ 131-32) is not limited to federal action claims, seeking compensatory, exemplary, interest, attorneys fees and court costs, and specific injunctive relief, consistent with relief in the Texas Fair Housing Act, Tex. Prop. Code, Section 301.153.

8. The pleading concludes in a final paragraph, "Southwest Key asks the Court to enter judgment for Southwest Key on all counts, and to grant any other relief it deems appropriate." Dkt # 1, p. 33, ¶ 132.

Based on the forgoing, SWK has plead causes of action under Texas State law. These causes of action support the City's Motion under the TCPA.

**B.   TCPA has been and should continue to be viewed as substantive and not in conflict with the federal rules.**

Although federal district courts are split on whether the TCPA applies in federal court, the greater weight of authority appears to support the argument that the TCPA would apply in a federal lawsuit when the claim at issue involves an application of state law—either through the exercise of diversity jurisdiction or supplemental jurisdiction over state claims in a federal question case. *Compare, e.g.*, *Banik v. Tamez, et al.*, No. 7:16-CV-462, 2017 WL 1228498, at *3 (S.D. Tex. Apr.

4, 2017) (relying on the Fifth Circuit's holding on the Louisiana anti-SLAPP statute and applying the TCPA in a defamation case as a substantive state law not in conflict with the federal rules) *with Rudkin v. Roger Beasley Imports, Inc.*, No. A-17-CV-849-LY, 2017 WL 6622561, at *3 (W.D. Tex. Dec. 28, 2017) (slip op.) (holding TCPA was procedural and conflicted with the federal rules of civil procedure.). *See* Becker, Sean "The Texas Anti-Slapp Statute and its Growing Importance for Employment Lawyers," presented at 25the University of Texas School of Law Annual Labor and Employment Law Conference, May 10-11, 2018; *see also Khalil v. Mem'l Hermann Health Sys.*, No. CV H-17-1954, 2017 WL 5068157 (S.D. Tex. Oct. 30, 2017) (slip op.).

The City recognizes that—as of this filing in December 2018—these issues are of great interest, and that the Fifth Circuit has more than one case before it which will potentially decide this issue. *Amici* briefs have explained the history and concerns for the chilling effect of litigation involving speech and petition on discussions of public concern, the loss of resources resulting from litigation, and the great potential for forum shopping. *See* Brief for the Reporters Committee for Freedom of the Press and 39 Media Organizations as *Amici Curiae* Supporting Appellants, *Van Dyke v. Retzlaff*, No. 18-40710 (5th Cir.) ("The First and Ninth Circuits, as well as federal district courts in a majority of jurisdictions that have

5

considered the issue, have found that state anti-SLAPP statutes apply to state claims in federal court.").

Finally, SWK's argument that the TCPA conflicts with the federal rules of civil procedure is not a novel one, and has been rejected by this Court. In *Banik v. Tamez*, the Court addressed the issue directly:

> As to his argument that a conflict exists, Plaintiff merely recites what is required for a plaintiff to survive a TCPA motion to dismiss, and compares that to the standards for Federal Rules 12 and 56. Plaintiff does not provide any cases from this Circuit where federal courts found that the Federal Rules are in conflict with the state anti-SLAPP statutes. Defendant does cite to other Circuits which have found no conflict. The Court's independent research reveals other cases where courts found the Federal Rules in conflict with state anti-SLAPP statutes. Obviously, there is currently a split of authority. This Court agrees with the reasoning of the First Circuit that Federal Rules 12 and 56 are addressed to different matters, whereas the TCAP "provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis: that the claims in question rest on the defendant's protected petitioning conduct and that the plaintiff cannot meet the special rules [Texas] has created to protect such petitioning activity against lawsuits."

2017 WL 1228498, at *3.

**C.    The City invokes the TCAP pursuant to its free speech rights, which, under TCAP, need not be of constitutional dimension; the government has a judicially recognized right of free speech.**

Southwest Key asserts that the City, which it claims is not a "person," has no First Amendment rights. The first point is incorrect and is contradicted by its own Original Complaint where it claims, "[t]he City of Houston is a person subject to 42 U.S.C. § 1983, 42 U.S.C. § 3602(d) and Texas Property Code § 301.003(12)." Dkt

# 1, p. 3, ¶ 9). Second, the TCPA's protections are broader than the First Amendment, and protects a government's rights of expression.

The City needs no constitutional right to proceed with its TCPA Motion. Under the TCPA, "[e]xercise of the right of free speech" means "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). Chapter 27.001(7) provides additional guidance: "'Matter of public concern' includes an issue related to … health or safety; the government, a public official or public figure …" Ch. 27.001(7)(A), (C), (D). This is consistent with the Fifth Circuit's recognition of governmental right of expression. In *Muir v. Alabama Educational Television Commission,* cited by SWK in footnotes 39-40 of their Response, the Fifth Circuit held:

> The plaintiffs emphasize that the protection of the First Amendment extends only to private expression and not to governmental expression. They assert that the amendment serves only to confer duties on government not rights. While this argument of the plaintiffs may be essentially correct it in no way resolves the issue before us. To find that the government is without First Amendment protection is not to find that the government is prohibited from speaking or that private individuals have the right to limit or control the expression of government. **Even without First Amendment protection government may "participate in the marketplace of ideas," and "contribute its own views to those of other speakers**." *Community Service Broadcasting v. F.C.C.*, 593 F.2d 1102, 1110 n. 17 (D.C. Cir. 1978). As Justice Stewart aptly noted in *Columbia Broadcasting Systems, Inc. v. Democratic National Committee*, 412 U.S. 94, 139, n. 7, 93 S.Ct. 2080, 2105, n. 7, 36 L.Ed.2d 772 (1973) (Stewart, J., concurring) (hereinafter CBS ), **"(g)overnment is not restrained by the First Amendment from controlling its own expression ... '(t)he purpose of the First Amendment is to protect private expression**

**and nothing in the guarantee precludes the government from controlling its own expression or that of its agents.'"**

688 F.2d 1033, 1038 (5th Cir. 1982) (emphasis added). Moreover, Texas Courts have made clear that the protections in the TCPA are broader than the First Amendment rights. The "right of free speech" in the TCPA includes both private and public speech. *Lipincott v. Whisenhunt*, 462 S.W. 3d 507, 508 (Tex. 2015). The only limitation on the protection is that the speech must be in connection with matters of public concern. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900-01 (Tex. 2017). The *Coleman* case, according to one appellate court, extinguished "[a]ny remaining doubts" as to whether TCPA's protections are "confined solely to speech that enjoys constitutional protection." *Elite Auto Body LLC v. Auto Bodywerks Inc.*, 520 S.W. 3d 191, 194 (Tex. App.—Austin 2017, pet. dism'd); *see also* Becker, "The Texas Anti-Slapp Statute and its Growing Importance for Employment Lawyers," at 6. It is therefore irrelevant that the government does not directly enjoy the protection of the First Amendment. The government retains the right of expression and the TCPA's own protections extend beyond constitutional guarantees.

**D.  Independently, the City invokes the TCPA for the Mayor, for whom it is alleged to be responsible per Plaintiff's Complaint (used as TCPA evidence) and whose words are described.**

SWK alleges that the City is a person subject to section 1983, 42 U.S.C. section 3602 and the Texas Property Code (Dkt # 1, p. 3, ¶ 9) and that, "[a]t all

8

relevant times described herein, the City acted through its agents, officers and employees." Dkt # 1, pp. 3-4. SWK describes those individuals' actions as those of "The City":

> The City's actions were motivated by race, color, national origin, ancestry, alienage or immigration status, or hostility to federal policy, or for political gain, or some combination of these factors. As a result, Southwest Key sued asserting various federal causes of action.

Dkt # 20, p. 3, ¶¶ 9-10 (emphasis added). The evidence of hostility is alleged to be the Mayor's words, for which Plaintiff alleges the City is responsible.

The Mayor has protected rights to utter words and offer criticism of policy as he sees fit. In *Bond v. Floyd*, 385 U.S. 116 (1966), the Chief Justice explained the "manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy." *Id.* at 135-36. The Chief Justice emphasized that "debate on public issues should be uninhibited, robust and wide-open," citing *New York Times v Sullivan*, 376 U.S. 254, 270 (1964), and taking the issue a major step further, outside the bounds of defamation:

> Just as erroneous statements must be protected to give freedom of expression, the breathing space it needs to survive, so statements criticizing public policy and the implementation of it must be similarly protected.

*Bond*, 385 U.S. at 136.

The U.S. Supreme Court specifically rejected the argument that the *NYT v Sullivan* principle should not be extended to elected officials beyond the "citizen-critic":

> The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protections to citizen critics than to legislators. Legislators have an obligation to take positions on controversial political questions so that their constituents can be fully informed by them, and be better able to assess their qualifications for office; also so they may be represented in governmental debates …

*Id.* SWK cannot take legal action which could have a chilling effect on the Mayor's speech and then side-step the protections of the TCPA by filing suit against the City only.

### E.     This legal action "relates to" exercise of free speech by the City, according to Southwest Key's own pleadings as well as the City's.

Southwest Key incorrectly argues that the City must prove that the speech at issue "[is] the foundation of Southwest Key's claims." Dkt # 20, p. 12, ¶ 32. The TCPA is not nearly so demanding:

> If a legal action is **based on, relates to,** *or* **is in response to** a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action.

Tex. Civ. Prac. & Rem. Code § 27.003 (emphasis added). These bases are disjunctive, not conjunctive. In addition, it is important to recall that the TCPA "shall be construed liberally to effectuate its purpose and intent fully." There is simply no requirement that the speech at issue be the "foundation" of the plaintiff's claims.

**F.      If SWK has not plead state law causes of action, the City's motion is moot.**

SWK's complaint is littered with state law claims which it incorporates into causes of action. The complaint also specifically requests that the court exercise supplemental jurisdiction over its state law claims. Nevertheless, if, as SWK now contends, the Complaint does not assert state law causes of action, then the City's Motion is moot. To that end, and to save the resources of the parties and the Court, the City has offered to withdraw its TCPA motion if SWK would formally withdraw its state law causes of action. SWK has not responded to that offer.

## **CONCLUSION**

Based on the above, Defendants prays that the Court, upon review of Defendant's Motion to Dismiss under 12(b)(1), Motion for Judgment on the Pleadings under 12(c), and its Motion to Dismiss Under Tex. Civ. Prac. & Rem. Code § 27.001, *et seq*., dismiss with prejudice all of Plaintiff's claims against it, enter Judgment that Plaintiff take nothing, and award Defendant fees, costs, and expenses, and such other and further relief to which it is justly entitled.

Respectfully submitted,

RONALD C LEWIS
CITY ATTORNEY
JUDITH L. RAMSEY
CHIEF, GENERAL LITIGATION SECTION

By: */s/ Tiffany S. Bingham*
  Tiffany S. Bingham
  Senior Assistant City Attorney
  ATTORNEY IN CHARGE
  State Bar No. 24012287
  S.D. Bar No. 1077536
  tiffany.bingham@houstontx.gov
  CITY OF HOUSTON LEGAL DEPARTMENT
  900 Bagby, 4th Floor
  Houston, Texas 77002
  832.393.6445
  832.393.6259 (facsimile)

Of Counsel:

Brian A. Amis
Senior Assistant City Attorney
State Bar No. 24040424
S.D. Bar No. 37342
brian.amis@houstontx.gov
CITY OF HOUSTON LEGAL DEPARTMENT
900 Bagby, 4th Floor
Houston, Texas 77002
832.393.6464
832.393.6259 (facsimile)

*Attorneys for the City of Houston*

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2018, I served the following attorneys with a true and correct copy of the foregoing document in accordance with Rule 5(b)(3) of the *Federal Rules of Civil Procedure* via the court's electronic filing / service system.

James Robinson Lindley
lindley@buckkeenan.com
Laura Gleen
lgleen@buckkeenan.com
BUCK KEENAN LLP
2229 San Felipe, Suite 1000
Houston, Texas 77019

*Attorneys for Plaintiff*
*Southwest Key Programs, Inc.*

                                                    */s/ Tiffany S. Bingham*
                                                    Tiffany S. Bingham